WILLIAM GARDINER *versus* JACOB P. MORSE.

All fraudulent acts and all combinations, having for their object to stifle fair competition at the biddings at auction sales, are unlawful.

Where the parties agreed, that if the defendant would not bid upon a note against the plaintiff, at an auction sale which was to be had thereof as part of the effects of a bankrupt, that the plaintiff would discharge a demand in his favor against the defendant, *it was held*, that such agreement was unlawful and void.

THE parties agreed upon a statement of facts, from which it appeared that in December, 1843, the defendant was in

Gardiner *v.* Morse.

debted to the plaintiff on account in the sum of $37,50; and still remains so, unless the same is discharged on the following state of facts. One Perry, a bankrupt, held a note against the plaintiff of about $200, which in December, 1843, was advertised to be sold at auction by the assignee of Perry. Gardiner then agreed with Morse, that if the latter " would not purchase the note, or bid upon it, so that Gardiner might be enabled to buy it in cheaper, he would, in consideration of the same, give up and discharge in full his said debt against said Morse." Morse did not purchase or bid upon the note at the sale.

If the agreement was legal and binding, and discharged the account of the plaintiff against the defendant, then judgment was to be entered in favor of the defendant. If the agreement was illegal and did not discharge the debt, then the defendant was to be defaulted.

*Randall*, for the plaintiff, said the true principle was, to consider void any bargain or agreement which tended to prevent competition at auction sales, or to cause the property sold to command a less price than otherwise it would. He contended, that the promise of the plaintiff, in this case, was void both for want of consideration, and as against the policy of the law. He cited *Howard* v. *Castle*, 6 T. R. 642; *Bexwell* v. *Chrislie*, Cowp. 395; *Jones* v. *Caswell*, 3 Johns. Cas. 29; *Thompson* v. *Davis*, 13 John. R. 112; *Doolin* v. *Ward*, 6 Johns. R. 194; *Wilber* v. *How*, 8 Johns. R. 444; *Fuller* v. *Abrahams*, 6 Moore, 318; *Gulic* v. *Ward*, 5 Halst. 87; *Piat* v. *Oliver*, 1 McLean, 295.

*Sawyer & Sewall*, for the defendant, contended that the agreement was valid, and that the demand in suit was discharged thereby.

The consideration was sufficient. Chitty on Con. (3d Am. Ed.) 7; 2 Kent, 463 to 466. If the defendant had purchased the note, he might have availed himself of it to pay this debt by way of set-off. Rev. St. 117, § 1.

The defendant is entitled to judgment, unless the agree-

ment was a fraudulent one; was against public policy, and operated injuriously upon Perry's rights; or was a fraud upon the creditors of Perry; for they are the only parties that ought to complain. *Condly* v. *Parsons*, 3 Ves. 625; *Smith* v. *Clark*, 12 Ves. 477; *Steele* v. *Ellmaker*, 11 Serg. & R. 86; *Bramlet* v. *Alt*, 3 Ves. 620; Chitty on Con. 227, and note; 2 Kent, 538; *Miller* v. *Campbell*, 3 Marsh. 526; *Jenkins* v. *Hogg*, 2 Const. R. 321; *Crowder* v. *Austin*, 1 C. & P. 208; *Phippen* v. *Stickney*, 3 Metc. 384.

The plaintiff has been equally guilty, if any wrong has been committed, and cannot now derive a benefit from it.

The opinion of the Court was drawn up by

W<small>HITMAN</small> C. J. — This case is submitted to us upon an agreed statement of facts. No question is made but that the cause of action accrued, and still exists, as set forth in the writ, unless discharged in the manner set up in the defence. One Josiah B. Perry held a note against the plaintiff for a much larger amount than the demand sued for. Perry became bankrupt, and his effects were about to be sold at auction for the benefit of his creditors; among which was the note against the plaintiff. The plaintiff, wishing to purchase his note at as low a rate as possible, agreed with the defendant, if he would not buy it, or bid for it at the auction, that he (the plaintiff) would "give up and discharge in full" the demand now sued for. The plaintiff contends that his promise so made was nugatory; that it was an agreement to do that which tended to the injury of the creditors of Perry, by lessening the competition among the bidders at the auction; and thereby preventing the obtaining so much for the plaintiff's note, as it might otherwise have sold for. He cites a number of authorities, certainly entitled to great weight in favor of his position. The defendant, on the other hand, insists, that the contract is obligatory; and cites, also, quite a number of authorities to maintain his position. The authorities are, certainly, somewhat in conflict upon the subject.

It must be admitted that fairness, in whatever is connected with auction sales, should be encouraged. Vast amounts of property are, and must continue to be disposed of, at such sales. It is a mode of proceeding necessarily resorted to in the execution of the decrees and determinations of courts of justice. The object in all cases is to make the most of property that fairly can be made of it. It is the policy of the law, therefore, to secure such sales from every species of undue influence. To allow bidders to buy off each other, which is but a species of bribery ; and so to combine to prevent a fair competition as that a sale may be rendered iniquitously fruitless, cannot be admissible. Whenever, therefore, it shall become apparent, in legal proceedings, that claims are set up, founded upon such practices, Courts should set their faces against them. We must take care nevertheless, not to confound such cases with those which have their origin in pure motives, and are of no evil tendency ; as where articles are set up at auction of great magnitude and value, to purchase which would be beyond the means of many classes of buyers. The formation of reasonable companies, and the joining together of two or more individuals, with a view to a division of the article between them, or to hold it in common, might, in many cases, become necessary, andtend greatly to the promotion of an advantageous sale. The true rule, upon the summing up of all the authorities seems to be satisfactorily deduced by Mr Justice Dewey, in delivering the opinion of the Court, in *Phippen* v. *Stickney*, 3 Metc. 384. It is, that all " fraudulent acts, and all combinations having for their object to stifle fair competition at the biddings, with the design of becoming the purchasers at a price less than the fair value of the property," are unlawful. That such was the character of the agreement relied upon in defence we cannot doubt.

*Defendant defaulted.*